UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

MICROBANC, LLC, and TODD SPENLA,

       Plaintiffs,

  -v-                                                  No. 16 CV 3860-LTS

INSPIREMD, INC.,

       Defendant.

-------------------------------------------------------x

<u>MEMORANDUM ORDER AND OPINION</u>

       Plaintiffs Microbanc, LLC ("Microbanc"), and Todd Spenla (collectively, "Plaintiffs"), bring this action against Defendant InspireMD, Inc. ("InspireMD"), asserting common-law contract and fraud claims. On February 23, 2017, this Court issued a Memorandum Opinion and Order (docket entry no. 21, the "February Opinion") granting Defendant's motion to dismiss Plaintiffs' complaint in its entirety. In the February Opinion, the Court granted Plaintiffs permission to move for leave to replead two breach of contract claims. (<u>Id.</u> at 8.) The February Opinion did not grant Plaintiffs permission to replead their unjust enrichment, quantum meruit, and fraud claims. (<u>Id.</u>)

       Plaintiffs now move to amend all of the claims in their original complaint, and to substitute Mr. Spenla's estate as a plaintiff following Mr. Spenla's death in November 2016. (Docket entry no. 25, the "Motion.") The Court has carefully considered the parties' submissions as to both motions and, for the reasons that follow, Plaintiffs' motion for leave to amend is denied, and their motion to substitute Mr. Spenla's estate as a plaintiff is denied as moot.

BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case, which are laid out in detail in the February Opinion. (February Opinion at 1-4.) The following abbreviated recitation of facts is drawn from Plaintiffs' Amended Complaint (docket entry no. 24-1, the "AC"), the well-pleaded factual allegations of which are taken as true for purposes of this motion practice, and from exhibits to Plaintiffs' AC, which are incorporated by reference.

On May 7, 2008, Microbanc and InspireMD entered into a Financial Advisory & Management Consulting Agreement (the "May 2008 Consulting Agreement") under which Microbanc was engaged for a six-month period to provide "financial advisory and management consulting services" and arrange access to investments. (AC ¶¶ 13-14; docket entry no. 24-3, Ex. A (May 2008 Consulting Agreement), ¶¶ 1, 2.) The May 2008 Consulting Agreement contained a clause stating: "No provision of this Agreement may be amended, modified or waived, except in a writing signed by all of the parties hereto." (May 2008 Consulting Agreement ¶ 10(e).)

Microbanc alleges that InspireMD "agreed with [Microbanc] to extend and/or renew" the Consulting Agreement "both orally and through the exchange of and assent to written communications, documents, drafts of proposed contracts and emails and by continuing to conduct themselves in a manner consistent [with] their agreement that the May 7, 2008 Consulting Agreement would continue to govern the ongoing relationship between the parties." (AC ¶¶ 16, 19.) Microbanc also alleges that Mr. Spenla and InspireMD's founder agreed to a new Consulting Agreement with the same terms and conditions of the May 2008 Consulting Agreement. (AC ¶ 20.) Microbanc alleges this new agreement was memorialized in a written agreement dated December 1, 2009 (the "December 2009 Consulting Agreement") with the

exact same terms and conditions as the May 2008 Consulting Agreement. (AC ¶ 21; docket entry no. 25-2, Ex. D (December 2009 Consulting Agreement).) The December 2009 Consulting Agreement is unsigned. (December 2009 Consulting Agreement at 5.) Microbanc alleges that InspireMD gave Microbanc "false assurances" to induce Microbanc into believing that a new written consulting agreement was unnecessary because the parties "had already agreed to extend/renew their existing agreement." (AC ¶ 87; see also AC ¶¶ 36-37.) At the same time, Microbanc alleges that InspireMD falsely asserted that the parties had in fact agreed to extend the May 2008 Consulting Agreement or enter into the new December 2009 Consulting Agreement. (AC ¶ 35.)

On December 16, 2009, Microbanc's agent James Burchetta organized a meeting between InspireMD and Palladium Capital Advisors LLC ("Palladium"). (AC ¶ 30.) As a result, Palladium arranged multiple rounds of financing for InspireMD totaling over $24 million. (AC ¶¶ 44-49.) Microbanc claims it is owed compensation under the May 2008 Consulting Agreement based on the Palladium introduction. (AC ¶¶ 50-51.) Microbanc alleges that InspireMD concealed its discussions with Palladium to prevent Microbanc from collecting a fee. (AC ¶ 34.)

In early May 2010, Microbanc arranged a separate $200,000 investment in InspireMD from an investor named Wallace Simon. (AC ¶ 52.) Microbanc alleges that InspireMD informed Microbanc that it would not pay any fees arising from the Simon investment until Microbanc executed a new Finders Agreement with InspireMD. (AC ¶ 54.) As a result, Microbanc executed the May 16, 2010, Finders Agreement (the "Finders Agreement"), which contains a condition precedent that any finder's fee "is subject to the prior written consent of" InspireMD, and must be given "prior" to the finder "approaching" any potential investor.

(AC ¶¶ 55-56; docket entry no. 26-2, Ex. I (Finders Agreement), ¶ 3.) The Finders Agreement provides that the Agreement "supersedes all discussions and exchanges or correspondence verbally or in writing, which may have taken place before its execution." (Finders Agreement ¶ 18.) The Finders Agreement also prohibits waiver or modification of its terms "except by an express agreement in writing signed by the party against whom enforcement of such waiver or modification is sought." (Finders Agreement ¶ 21.)

Microbanc claims that it was "deceived/coerced" into executing the Finders Agreement. (AC ¶ 89.) Microbanc also alleges that the Finders Agreement was drafted to "memorialize [InspireMD's] prior finders agreement with Microbanc and to be applicable retroactively to introduction(s) of and investments by investors such as Wallace Simon and Palladium." (AC ¶ 57.) Microbanc claims that the "exchange of written documents, agreements and electronic communications exchanged between the parties individually and/or collectively" satisfy the condition precedent for the Finders Agreement. (AC ¶ 58.) Microbanc also alleges that InspireMD waived the condition precedent in connection with both the Wallace Simon and Palladium introductions. (AC ¶ 59.)

Microbanc avers that at "all relevant times" from May 7, 2008 to May 2010, it "continued to seek appropriate investors to introduce to InspireMD pursuant to the terms and conditions of the May 2008 Consulting Agreement." (AC ¶ 15.) Microbanc claims that it "completely" executed and performed its obligations under the May 2008 and December 2009 Consulting Agreements, and that it "substantially" executed and performed its obligations under those same agreements "in a manner that was unequivocally referable to and could only be explained by" either the extension of the May 2008 Consulting Agreement, or the formation of a new identical December 2009 Agreement. (AC ¶¶ 40-42.)

DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). While granting or denying such leave is within the discretion of the district court, Reisner v. General Motors Corp., 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), leave to amend will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted).

Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). However, a "pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). When determining the sufficiency of a claim under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the

complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

Because the Court dismissed Plaintiff's unjust enrichment, quantum meruit, and fraud claims with prejudice, the Court construes Plaintiff's motion for leave to amend with respect to those claims as a motion for reconsideration of the February Opinion on those counts. Reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3 is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted). Such a motion is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided. Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation and quotation marks omitted).

Count One: Breach of the May 2008 Consulting Agreement

In the February Opinion, this Court held that Plaintiffs did not state a claim for breach of the May 2008 Consulting Agreement because they failed to allege the existence of a signed writing memorializing the parties' agreement to extend the May 2008 Consulting Agreement. (February Opinion at 5.) Plaintiffs' AC alleges that the requisite signed writing can be found in "the exchange of and assent to written communications, documents, drafts of proposed contracts and emails." (AC ¶¶ 16, 19, 43.) This conclusory statement, repeated

throughout Plaintiffs' AC, is insufficient to allege plausibly that the May 2008 Consulting Agreement was extended and in effect at the time of the December 19, 2009 Palladium introduction. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, nothing in the emails attached to Plaintiffs Amended Complaint as Exhibits B, D, E, G, H, or J suggests that the parties agreed to extend or renew the May 2008 Consulting Agreement. (See docket entry nos. 25-2, 25-3, 26-1, 26-3, 36.) Thus, Plaintiffs do not state a claim for breach of the May 2008 Consulting Agreement, because Plaintiffs have not pled plausibly that the agreement was in effect at the time of the alleged breach.

In the alternative, Plaintiffs argue that no written modification is required, citing the New York Court of Appeals' decision in Rose v. Spa Realty, 366 N.E.2d 1279 (N.Y. 1977). Rose holds that a contractual prohibition against oral modification may be waived by a showing of complete performance, partial performance, or estoppel. Id. at 1282-83. Partial performance in this context must be "unequivocally referable to the oral modification," and conduct relied upon to establish estoppel must similarly "not otherwise be compatible with the agreement as written." Id. Plaintiffs contend that all three Rose exceptions apply here; however, Plaintiffs' allegations are insufficient to meet Rose's "stringent" standards. See L & B 57th Street, Inc. v. E.M. Blanchard, Inc., 143 F.3d 88, 93 (2d Cir. 1998) (describing part performance and estoppel exceptions).

First, Plaintiffs do not allege plausibly that complete performance of the modification occurred, because, as Defendants correctly observe, Plaintiffs allege the exact opposite—that InspireMD did not perform in accordance with the alleged modification, and in fact sought to execute a new consulting agreement in December 2009. See J&R Landscaping,

Inc. v. Damianos, 769 N.Y.S.2d 52, 53 (N.Y. App. Div. 2003) (finding full performance of oral modification to extend time period where both parties actively continued to seek removal of covenants well after period specified in contract); see also Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC, 4 N.E.3d 336, 344-45 (N.Y. 2013) (no full performance where parties' conduct was just as demonstrative of no oral modification as of completion of the purported oral modification).

Second, the parties' alleged partial performance is not "unequivocally referable to the oral modification." For conduct to be "unequivocally referable," it must be "explainable only with reference to the oral agreement." Anostario v. Vicinanzo, 59 N.Y.2d 662, 664 (N.Y. Ct. App. 1983). Where the conduct is "reasonably explained by the possibility of other expectations," including "preparatory steps taken with a view toward consummation of an agreement in the future," it does not satisfy this standard. Id.; see also Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d. Cir. 1998). The parties' alleged conduct, including negotiation of a new, unsigned Consulting Agreement in December 2009 is not "explainable only with reference" to an oral modification extending or renewing the May 2008 Consulting Agreement; indeed, it suggests that the parties felt the need to enter into a new agreement precisely because they recognized that the May 2008 Consulting Agreement had not been extended. Plaintiffs' alleged conduct after the May 2008 Consulting Agreement expired can also reasonably be explained as "preparatory steps" taken with a view toward consummation of the December 2009 Consulting Agreement or May 2010 Finders Agreement. That same conduct also undermines any potential equitable estoppel argument in favor of an alleged modification extending or renewing the May 2008 Consulting Agreement. Therefore, Plaintiffs

have not alleged plausibly facts supporting a conclusion that any of the Rose exceptions applies in this case, and leave to amend Count One is denied as futile.

Count Two: Breach of the Finders Agreement

In the February Opinion, this Court held that Plaintiffs did not state a claim for breach of the Finders Agreement because they failed to allege that the condition precedent for the payment of fees under the Finders Agreement was met. (February Opinion at 5-6.) Plaintiffs' AC alleges that the condition precedent was satisfied by the "exchange of written documents, agreements and electronic communications" between the parties. (AC ¶ 58.) In the alternative, Plaintiffs argue that InspireMD waived the condition precedent. (AC ¶ 59; Motion at 12.) Plaintiffs' vague and conclusory allusion to the existence of unspecified "written documents" is insufficient to allege plausibly that the condition precedent has been met, Iqbal, 556 U.S. at 678, and nothing in the exhibits attached to Plaintiffs' AC suggests that InspireMD provided any prior written consent to approach an investor. (See docket entry nos. 25-2, 25-3, 26-1, 26-3, 36).

Plaintiffs' waiver argument is similarly unavailing because the Finders Agreement prohibits waivers except in an express agreement signed by the party against whom enforcement of the waiver is sought, and Plaintiffs have failed to allege the existence of such an agreement. (Finders Agreement ¶ 21.) More fundamentally, even if such an agreement did exist, Plaintiffs have not alleged plausibly that the damages they seek are attributable to a breach of the Finders Agreement, which was not in effect at the time of the Palladium introduction and by its terms supersedes all prior discussions. See Bausch & Lomb Inc. v. Bressler, 977 F.2d 720, 731 (2d Cir. 1992) ("The plaintiff thus must demonstrate that the damages were caused by and are directly traceable to the [defendant's] breach") (citations and internal quotations omitted).

Although Plaintiffs assert in a conclusory fashion that the Finders Agreement was drafted to memorialize a prior agreement with Microbanc and was intended to apply retroactively to the Palladium introduction, (AC ¶ 57), this allegation finds no factual support in Plaintiffs' AC, and is belied by the clear terms of the Finders Agreement and Plaintiffs' own allegation that they executed the Finders Agreement as a condition of being paid a fee for the separate and unrelated Wallace introduction (AC ¶¶ 54-55).  See Labajo v. Best Buy Stores, L.P., 478 F.Supp.2d 523, 528 (S.D.N.Y. 2007) ("Where a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference, however, the court is not required to accept them.").  Accordingly, leave to amend Count Two is denied.

Counts Three and Four: Quantum Meruit and Unjust Enrichment

This Court previously dismissed Plaintiffs' Counts Three and Four as precluded by the Statute of Frauds, which voids contracts for finder's fees unless they are in writing.  See N.Y. General Obligations Law § 5-701(a), (a)(10); see also Snyder v. Bronfman, 13 N.Y.3d 504, 509 (2009) (dismissing quantum meruit and unjust enrichment claims based on "finding and negotiating [a] transaction" because of the application of New York's Statute of Frauds).  In their Motion, Plaintiffs raise the same arguments and cases that they previously presented in connection with Defendant's motion to dismiss.  (Compare docket entry no. 13, at 18-21 with Motion at 12-13.)  The cases cited by Plaintiffs do not warrant reconsideration because, unlike Snyder, they concern instances where there was a writing or series of writings signed by the party to be charged reflecting an agreement containing at least some material terms.  See, e.g., Morris Cohon & Co. v. Russell, 245 N.E.2d 712 (N.Y. 1969) (written memorandum silent as to compensation still sufficient to support a claim for quantum meruit); Davis & Mamber v.

Adrienne Vittadini, Inc., 622 N.Y.S.2d 706 (N.Y. App. Div. 1995) (signed letter from defendant authorizing plaintiff to act as broker). Here, Plaintiffs have not sufficiently alleged the existence of a signed agreement entitling them to a finder's fee for the Palladium introduction, and under the New York Statute of Frauds any oral agreement for such compensation is unenforceable. See Snyder, 13 N.Y.3d at 509; Bell Indep. Power Corp. v. Owens-Illinois, Inc., 947 F. Supp. 2d 341, 352-54 (W.D.N.Y. 2013). Plaintiffs have failed to identify a legal or factual basis justifying reconsideration of its order dismissing Counts Three and Four, and accordingly, their motion for reconsideration with respect to these counts is denied.

Count Five: Fraud

This Court previously dismissed Plaintiffs' fraud claim because it was duplicative of Plaintiffs' breach of contract claims. See Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC, No. 08 CV 9101, 2009 WL 5179535, at *10 (S.D.N.Y. Dec. 29, 2009) ("Under New York law, a fraud claim that mirrors a breach of contract claim will not ordinarily stand."). Plaintiffs AC alleges that InspireMD falsely induced Microbanc to believe that the May 2008 Consulting Agreement was in full effect because it had been extended. (See AC ¶ 35.) This assertion is contradicted by the next paragraph of Plaintiffs' AC, which, like the Plaintiffs' original complaint, alleges that the relevant misrepresentation was InspireMD's assertion that the May 2008 Consulting Agreement had expired. (Compare AC ¶ 35 with ¶ 36.) The addition of new factual allegations, particularly ones that are facially inconsistent, do not provide a basis for reconsideration. In any event, the reasoning in the Court's February Opinion stands. If, as Plaintiffs assert in paragraph 35 of the AC, InspireMD falsely induced Microbanc to believe that the May 2008 Consulting Agreement had been extended, then Plaintiffs' claimed fraud damages

mirror their breach of contract claim in Count One.  However if, as Plaintiffs assert in paragraph 36 of the AC, InspireMD falsely induced Microbanc to believe that the May 2008 Consulting Agreement had expired, Plaintiffs cannot establish their entitlement to any damages because they have not alleged plausibly that the Consulting Agreement was in effect at the time of the Palladium introduction.  Accordingly, Plaintiffs' motion for reconsideration of the dismissal of Count Five is denied.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for leave to file an amended complaint is denied, and the related motion to substitute a plaintiff is denied as moot.  This Memorandum Opinion and Order resolves docket entry no. 25.  The Clerk of Court is directed to enter judgment dismissing the complaint in accordance with the February Opinion (docket entry no. 21) and this decisions, and close this case.


SO ORDERED.

Dated: New York, New York
January 22, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge